UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
DENNIS J. DONAHUE, JR., <u>et al</u>.,        )
                                    )
            Plaintiffs              )
                                    )
      v.                            )        Civil Action No. 10-0128 (PLF)
                                    )
UNITED STATES OF AMERICA,           )
                                    )
            Defendant.              )
_____)


OPINION

            This matter is before the Court on the defendant's motion to dismiss the plaintiffs'

complaint for lack of subject matter jurisdiction.  After careful consideration of the parties'

papers, the attached exhibits, and the relevant statutes and case law, the Court granted the

defendant's motion by Order dated March 26, 2012, and dismissed the case with prejudice.  This

Opinion explains the reasoning underlying that Order.[1]


I.  BACKGROUND

            Plaintiffs Dennis Donahue, Jr., Rosalea Donahue, and Lawrence Farrell are former

investors in, and victims of, the infamous Bernard Madoff Ponzi scheme.  Compl. ¶ 1.  The

plaintiffs brought suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq*.

("FTCA"), alleging "serial, gross negligence" on the part of the Securities and Exchange

---

[1]     The Court considered the following papers in connection with this matter: the
plaintiffs' complaint ("Compl."); the defendant's memorandum of points and authorities in
support of its motion to dismiss ("Def. Mem."); plaintiff Lawrence Farrell's *pro se* opposition to
the defendant's motion to dismiss ("Opp."), later joined by plaintiffs Dennis Donahue, Jr. and
Rosalea Donahue; the defendant's reply ("Reply"); the plaintiffs' surreply ("Surreply"); and the
several notices of supplemental authority filed by the parties.

Commission ("SEC") over a period of more than fifteen years in its investigations and

examinations of Mr. Madoff and his firm, Bernard L. Madoff Investment Securities LLC.  Id.

Collectively, the plaintiffs lost more than two million dollars in investments as a result of the

Madoff scheme.  Id. ¶ 2.[2]

The United States moved to dismiss, arguing that the Court lacks subject matter

jurisdiction over this action by virtue of the discretionary function exception to the FTCA, which

exempts the United States from liability for harm caused by the exercise or performance of

discretionary functions by government agencies or employees.  See 28 U.S.C. § 2680(a); Def.

Mem. at 3.  The United States contends that the actions taken by SEC staffers in the course of the

agency's Madoff inquiries that allegedly harmed the plaintiffs were discretionary within the

meaning of the FTCA.  Def. Mem. at 1-2.  The government also maintains that those actions are

intertwined with the SEC's "quintessentially discretionary" power to commence civil

proceedings against suspected wrongdoers, and thus immune from FTCA liability.  Id. at 2, 9-13.

The plaintiffs rely for the factual assertions of their complaint on an investigative

report issued in 2009 by the SEC's Office of the Inspector General ("OIG Report") cataloguing

the agency's myriad failures in investigating Madoff's enterprise over the years.  Compl. ¶ 1.

Drawing on the OIG Report, the plaintiffs allege that between 1992 and 2008 the SEC received

numerous complaints and other indications related to Madoff's brokerage firm that credibly

---

[2]       In compliance with 28 U.S.C. §§ 2401(b) and 2675(a), the plaintiffs submitted administrative claims to the SEC before filing suit; those claims were denied.  Compl. ¶¶ 20-23. The plaintiffs brought their complaint against both the United States of America and the SEC. The SEC moved to dismiss the claim against it for lack of jurisdiction, arguing that it cannot be sued under the FTCA.  See Securities and Exchange Commission's Motion to Dismiss [Dkt. No. 4].  The plaintiffs did not oppose the SEC's motion, see Opp. at 1, which the Court granted on March 17, 2011.  See Order, Donahue et al. v. United States (Mar. 17, 2011) [Dkt. No. 24].

indicated he may have been engaged in fraud.  Although the SEC conducted two examinations

and three investigations in response to the information it received, each was fraught with grave

errors that prevented the discovery of Madoff's fraud.  Id. ¶ 5.  As the OIG Report concludes:

> The OIG investigation found that the SEC received numerous substantive complaints since 1992 that raised significant red flags concerning Madoff's hedge fund operations and should have led to questions about whether Madoff was actually engaged in trading and should have led to a thorough examination and/or investigation of the possibility that Madoff was operating a Ponzi scheme.  However, the OIG found that although the SEC conducted five examinations and investigations of Madoff based upon these substantive complaints, they never took the necessary and basic steps to determine if Madoff was misrepresenting his trading.  We also found that had these efforts been made with appropriate follow-up, the SEC could have uncovered the Ponzi scheme well before Madoff confessed.
>
> The OIG found that the conduct of the examinations and investigations was similar in that they were generally conducted by inexperienced personnel, not planned adequately, and were too limited in scope.  While examiners and investigators discovered suspicious information and evidence and caught Madoff in contradictions and inconsistencies, they either disregarded these concerns or relied inappropriately upon Madoff's representations and documentation in dismissing them.  Further, the SEC examiners and investigators failed to understand the complexities of Madoff's trading and the importance of verifying his returns with independent third parties.

Compl. ¶ 13 (quoting OIG Report at 456-57); see id. ¶¶ 32-159 (detailing at length the OIG

Report's findings about the SEC's botched oversight of Madoff); see also Dichter-Mad Family

Partners, LLP v. United States, 707 F. Supp. 2d 1016, 1020-24 (C.D. Cal. 2010) (providing

concise summary of the OIG Report's main findings).

      When Madoff's Ponzi scheme collapsed, plaintiffs Dennis and Rosalea Donahue

lost $774,000 that they had invested in a Madoff "feeder fund" known as MOT Family Investing,

and plaintiff Lawrence Farrell lost over $1.4 million that he had invested in that fund.  Compl.
¶ 10.  The plaintiffs allege that the SEC negligently delegated inquiries about Madoff to SEC
teams that lacked expertise in financial fraud; assigned critical tasks to inexperienced junior
staffers who lacked relevant training or experience; failed to contact third parties to confirm
Madoff's claimed trading activities; and allowed "inter-office rivalries" and awe at Madoff's
prestige to impair its investigations.  Id. ¶ 6.  The plaintiffs further allege that SEC employees
repeatedly violated the agency's policies by failing to comply with protocol for the opening and
closing of investigations and for the sharing of information among offices and teams.  Id. ¶¶ 6,
12, 109, 130.

       Through these manifold failures, the plaintiffs contend, the SEC breached a duty
of care to the plaintiffs and other investors in Madoff's enterprise.  Compl. ¶ 2.  The agency
purportedly owed such a duty to these investors "because it was reasonably foreseeable that they
would rely on the SEC to remove the danger posed by Madoff if the SEC had information
confirming the existence of that danger."  Id.  The SEC's breach of this duty proximately caused
the plaintiffs' injuries, they contend, because those injuries "were the natural, probable, and
foreseeable outcome of the SEC's failure to terminate Madoff's Ponzi scheme despite its
multiple opportunities to do so."  Id.  The plaintiffs further contend that the SEC's failed
investigatory efforts caused the agency to breach a duty to warn investors that Madoff was
engaged in a Ponzi scheme.  Opp. at 6.

       Claims nearly identical to the plaintiffs' have been brought by other victims of
Madoff's fraud in at least three other district courts; each complaint has been dismissed for lack
of subject matter jurisdiction under the discretionary function exception to the FTCA.  See Baer

v. United States, No. 11-1277, 2011 WL 6131789 (D.N.J. Dec. 8, 2011); Molchatsky v. United

States, 778 F. Supp. 2d 421 (S.D.N.Y. 2011); Dichter-Mad Family Partners, LLP v. United

States, 707 F. Supp. 2d 1016 (C.D. Cal. 2010).  As explained below, the Court agrees with the

reasoning of those decisions and concludes that it lacks jurisdiction over the plaintiffs' claims.

## II.  STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction, with the ability to hear only cases

entrusted to them by a grant of power contained in either the Constitution or in an act of

Congress.  See, e.g., Beethoven.com LLC v. Librarian of Congress, 394 F.3d 939, 945 (D.C. Cir.

2005); Tabman v. FBI, 718 F. Supp. 2d 98, 100 (D.D.C. 2010); Hunter v. District of Columbia,

384 F. Supp. 2d 257, 259 (D.D.C. 2005).  On a motion to dismiss for lack of subject matter

jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the

burden of establishing that the Court has jurisdiction.  See Tabman v. FBI, 718 F. Supp. 2d at

1001; Brady Campaign to Prevent Gun Violence v. Ashcroft, 339 F. Supp. 2d 68, 72 (D.D.C.

2004).  In determining whether to grant such a motion, the Court must construe the complaint in

the plaintiff's favor and treat all well-pled allegations of fact as true.  See Jerome Stevens

Pharms., Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005).  The Court need not accept

unsupported inferences or legal conclusions cast as factual allegations.  See Primax Recoveries,

Inc. v. Lee, 260 F. Supp. 2d 43, 47 (D.D.C. 2003).  Under Rule 12(b)(1), the Court may dispose

of the motion on the basis of the complaint alone or it may consider materials beyond the

pleadings "as it deems appropriate to resolve the question whether it has jurisdiction to hear the

case."  Scolaro v. D.C. Board of Elections and Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000);

see also Coalition for Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003).  In

this case, the Court has considered the SEC's OIG Report, attached to the plaintiffs' complaint,

along with a subsequent report by the Inspector General and the SEC Enforcement Manual.[3]

## III.  DISCUSSION

### A.  The Discretionary Function Exception to the FTCA

The United States is immune from suit unless it waives its sovereign immunity

through an act of Congress.  See F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994).  The Federal Tort

Claims Act provides such a waiver in civil damages actions based on

> injury or loss of property, or personal injury or death caused by the
> negligent or wrongful act or omission of any employee of the
> Government while acting within the scope of his office or
> employment, under circumstances where the United States, if a
> private person, would be liable to the claimant in accordance with
> the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1); see F.D.I.C. v. Meyer, 510 U.S. at 475.  A waiver of sovereign

immunity, however, must be "strictly construed, in terms of its scope, in favor of the sovereign."

Tri-State Hosp. Supply Corp. v. United States, 341 F.3d 571, 575 (D.C. Cir. 2003) (quoting

Dep't of Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999)).  A party bringing suit against the

United States under the FTCA bears the burden of proving that the government has

unequivocally waived its immunity for the type of claim involved.  Tri-State Hosp. Supply Corp.

---

[3]      The OIG Report, "Investigation of Failure of the SEC to Uncover Bernard
Madoff's Ponzi Scheme," is available at http://www.sec.gov/news/studies/2009/oig-509.pdf.
The second report, "Review and Analysis of OCIE Examinations of Bernard L. Madoff
Investment Securities, LLC," is available at
http://www.sec-oig.gov/Reports/AuditsInspections/2009/468.pdf.  The SEC's Enforcement
Manual is available at http://sec.gov/divisions/enforce/enforcementmanual.pdf.

v. United States, 341 F.3d at 575; Tabman v. FBI, 718 F. Supp. 2d at 103; see 28 U.S.C.

§§ 1346(b), 2680.

The FTCA provides that the jurisdiction given to district courts under 28 U.S.C.

§ 1346(b)(1) does not apply in cases where a claim is "based upon the exercise or performance or

the failure to exercise or perform a discretionary function or duty on the part of a federal agency

or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C.

§ 2680(a).  Thus, where a claim is based upon an act performed while exercising a discretionary

function, "there is no waiver of sovereign immunity and the government is protected from suit.

By contrast, if there is no discretionary function involved, the United States has waived its

sovereign immunity and the federal district courts have subject matter jurisdiction over the

claim."  Hayes v. United States, 539 F. Supp. 2d 393, 400 (D.D.C. 2008).  As the Supreme Court

has explained, "the purpose of the exception is to 'prevent judicial second-guessing of legislative

and administrative decisions grounded in social, economic, and political policy through the

medium of an action in tort.'"  United States v. Gaubert, 499 U.S. 315, 323 (1991) (quoting

Berkovitz v. United States,  486 U.S. 531, 37 (1988)) (internal quotations omitted).  To establish

jurisdiction, a complaint must set forth facts demonstrating governmental conduct that is not

exempted from FTCA liability by the discretionary function exception.  United States v. Gaubert,

499 U.S. 315, 334 (1991); Shuler v. United States, 531 F.3d 930, 933-34 (D.C. Cir. 2008).[4]

---

[4]        The plaintiffs argue that the government bears the burden of proving that the
discretionary function exception bars their claim.  They note that while plaintiffs must establish
the existence of jurisdiction under the FTCA, a majority of circuits places the burden on the
government to prove that one of the *exceptions* to the FTCA set forth in 28 U.S.C. § 2680
applies.  See Opp. at 12-13 & n.2 (citing cases).  But these circuits do so only where the plaintiff
first alleges governmental conduct that facially falls outside the exceptions of Section 2680 —
only then does the burden shift to the government.  See, e.g., Sharp v. United States, 401 F.3d

The Supreme Court has established a two-part test for determining whether government conduct challenged by a plaintiff falls within the discretionary function exception. See United States v. Gaubert, 499 U.S. at 322-23 (citing Berkovitz v. United States, 486 U.S. at 536-37).  First, a court must look to the nature of each act and whether it involves an "element of judgment or choice."  Id. at 322 (quoting Berkovitz v. United States, 486 U.S. at 536).  When a "federal statute, regulation, or policy specifically prescribes a course of action," there is no judgment or choice involved, and the discretionary function exception does not apply, because "the employee has no rightful option but to adhere to the directive."  Id. (quoting Berkovitz v. United States, 486 U.S. at 536).

---

440, 443-44 n.1 (6th Cir. 2005) ("Only after a plaintiff has successfully invoked jurisdiction by a pleading that facially alleges matters not excepted by § 2680 does the burden fall on the government to prove the applicability of a specific provision of § 2680.").  Thus, even those circuits employing a burden-shifting framework require an initial, facially persuasive showing from the plaintiff to establish jurisdiction.  See, e.g., Prescott v. United States, 973 F.2d 696, 701 (9th Cir. 1992) ("[A] plaintiff may not invoke federal jurisdiction by pleading matters that clearly fall within the exceptions of § 2680.") (internal quotation omitted).  Adoption of this framework would not aid the plaintiffs, because the conduct on which their claim is based unmistakably falls within the discretionary function exception.  See infra at 15-26.  Because the plaintiffs have not made the initial showing required by this framework, they cannot have shifted any burden to the government to "offer evidence" proving the applicability of the discretionary function exception.  Opp. at 14.

    While the D.C. Circuit has not held that the burden of proof ever shifts to the government, it clearly agrees that plaintiffs bear an initial jurisdictional burden of pleading facts that fall outside the discretionary function exception.  See Shuler v. United States, 531 F.3d at 933-34 ("Under the FTCA, the district court has subject matter jurisdiction to consider the merits of Shuler's claim *only if his complaint sets forth facts sufficient to demonstrate* either that the government employee whose conduct caused him harm violated a specifically prescribed policy, or that the employee's harmful conduct was not within the sphere of discretion lawfully given him[.]") (emphasis added); Ignatiev v. United States, 238 F.3d 464, 466 (D.C. Cir. 2001) (stating that to survive a motion to dismiss, a complaint must allege conduct that is not shielded by the discretionary function exception).  Where, as here, plaintiffs fail to satisfy that initial requirement, it is irrelevant whether any burden ever shifts to the government.

Second, if the challenged acts do involve an element of judgment or choice, the court still must consider whether those acts "'are of the nature and quality that Congress intended to shield from tort liability.'"  Cope v. Scott, 45 F.3d 445, 448 (D.C. Cir. 1995) (quoting United States v. Varig Airlines, 467 U.S. 797, 813 (1984)).  Because the purpose of the discretionary function exception is to prevent second-guessing of "legislative and administrative decisions grounded in social, economic, and political policy," the exception "protects only governmental actions and decisions based on considerations of public policy."  United States v. Gaubert, 499 U.S. at 323 (internal quotations omitted).  Furthermore, the question is not whether a government agent actually weighed policy considerations in making a particular choice; rather, the test is satisfied if the type of choice at issue *is susceptible to* policy considerations.  Id. at 325 ("The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis."); see Cope v. Scott, 45 F.3d at 449 ("What matters is not what the decisionmaker was thinking, but whether the type of decision being challenged is grounded in social, economic, or political policy.").

So long as the act in question satisfies the two-part test described above, the discretionary function exception applies regardless of the rank or position of the government employee responsible for the decision: "'[I]t is the nature of the conduct, rather than the status of the actor,' that governs whether the exception applies."  United States v. Gaubert, 499 U.S. at 322 (quoting United States v. Varig Airlines, 467 U.S. at 813).

### B.  The SEC's Investigatory Discretion

In conferring power on the SEC to investigate securities law violations under the Securities Exchange Act of 1934, Congress has explicitly made the agency's use of that power discretionary:

> The Commission may, *in its discretion*, make such investigations as it deems necessary to determine whether any person has violated, is violating, or is about to violate any provision of this chapter . . . .  The Commission is authorized *in its discretion*, to publish information concerning any such violations, and to investigate any facts, conditions, practices, or matters which it may deem necessary or proper to aid in the enforcement of such provisions.

15 U.S.C. § 78u(a)(1) (emphasis added).  "In view of this language," it is "especially difficult to agree with Plaintiffs that the manner in which the SEC conducts its investigations is not a matter entrusted to its discretion."  Baer v. United States, 2011 WL 6131789 at *6 (citing Heckler v. Chaney, 470 U.S. 821, 831 (1985)); accord Dichter-Mad Family Partners, LLP v. United States, 707 F. Supp. 2d at 1035 ("The statute repeatedly uses permissive language rather than mandatory language.  The SEC has discretion to decide both the timing of when it 'make[s] such investigations,' and the manner and scope of how to 'investigate any facts, conditions, practices, or matters.'"); Molchatsky v. United States, 778 F. Supp. 2d at 436 ("The 1934 Act . . . define[s] the SEC's investigative and enforcement powers as permissive and discretionary.").

As other courts have recognized, it could not be more clear that the SEC's broad power to conduct investigations into securities law violations is discretionary in nature.  Moreover, "[w]hatever else the discretionary function exception may include, [the exception] plainly was intended to encompass the discretionary acts of the Government acting in its role as a

regulator of the conduct of private individuals."  United States v. Varig Airlines, 467 U.S. at

813-14.  That is because "Congress wished to prevent judicial 'second-guessing' of legislative

and administrative decisions grounded in social, economic, and political policy through the

medium of an action in tort."  Id. at 814.  Accordingly, "the courts have unanimously rejected

challenges to the SEC's use of its investigatory powers."  Dichter-Mad Family Partners, LLP v.

United States, 707 F. Supp. 2d at 1036.  See, e.g., Levy v. United States, 956 F.2d 274 (9th Cir.

1992) (affirming dismissal of FTCA claim against SEC for failure to investigate and disclose

insolvency of company acquired by plaintiff); Robert Juan Dartez, LLC v. United States, 824

F. Supp. 2d 743 (N.D. Tex. 2011) (applying discretionary function exception to dismiss FTCA

claim based on SEC's failure to uncover Ponzi scheme).  "Investigation and prosecution under

[Section § 78u(a)] of the Securities Acts is discretionary; therefore the United States is immune

to [such] claims."  S.E.C. v. Better Life Club of Am., Inc., 995 F. Supp. 167, 180 (D.D.C. 1998)),

aff'd 203 F.3d 54 (D.C. Cir. 1999).[5]

The plaintiffs acknowledge the challenge to their lawsuit posed by the

discretionary function exception and have preemptively contested the applicability of that

exception in their complaint itself.  According to the plaintiffs, the exception does not apply here

because "those members of the SEC who investigated Madoff from time to time were not

crafting policy or making rules.  Rather, the SEC staff was carrying out their usual and regular

obligations to review and investigate its registrants and potential wrongdoing[.]"  Compl. ¶ 3; see

---

[5]         This state of affairs does not mean that all conduct by the SEC is categorically
immune from FTCA liability.  "[T]he exception was designed to cover not all acts of regulatory
agencies and their employees, but only such acts as are 'discretionary' in nature."  Berkovitz v.
United States, 486 U.S. at 538.

id. ¶ 14 ("Nor did the misconduct of the SEC staff have anything to do with rule-making or policy analysis and implementation.").  But the Supreme Court has long rejected the notion that acts by lower level employees are unprotected by the discretionary function exception merely because those employees are not involved in "crafting policy or making rules."  Compl. ¶ 3.  See Dalehite v. United States, 346 U.S. 15, 36 (1953) ("Where there is room for policy judgment and decision there is discretion.  It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable.").  As explained in Gaubert, the exception covers not only "planning-level decisions establishing programs" and "the promulgation of regulations" but also "the actions of Government agents involving the necessary element of choice and grounded in the social, economic, or political goals of the statute and regulations."  United States v. Gaubert, 499 U.S. at 323; see United States v. Varig Airlines, 467 U.S. at 813 ("[I]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case."); Sloan v. U.S. Dep't of Housing and Urban Dev., 236 F.3d 756, 764 (D.C. Cir. 2001) (stating that the discretionary function test "is not limited to actions taken at the policy-planning level").

Actions taken by SEC staffers pursuant to their investigatory responsibilities are exempt from the FTCA if they satisfy the two-part test for the discretionary function exception articulated in Berkovitz and Gaubert.  Such actions will almost certainly satisfy the first half of this test, because "the sifting of evidence, the weighing of its significance, and the myriad other decisions made during investigations plainly involve elements of judgment and choice."  Sloan v. U.S. Dep't of Housing and Urban Dev., 236 F.3d at 762 (applying discretionary function

exception to alleged negligence of HUD investigators that prompted adverse action against plaintiff).  Such conduct is discretionary, not mandatory.

      With respect to the second half of the test — whether these discretionary acts "'are of the nature and quality that Congress intended to shield from tort liability,'" Cope v. Scott, 45 F.3d at 448 (quoting United States v. Varig Airlines, 467 U.S. at 813) — the Supreme Court has stated that "if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulation." United States v. Gaubert, 499 U.S. at 324.  Significantly, the regulations under which SEC investigators operate entail a level of discretion comparable to that of the enabling statute:

> Where, from complaints received from members of the public, communications from Federal or State agencies, examination of filings made with the Commission, or otherwise, it appears that there may be violation of the acts administered by the Commission or the rules or regulations thereunder, a preliminary investigation is generally made.  In such preliminary investigation no process is issued or testimony compelled.  The Commission may, in its discretion, make such formal investigations and authorize the use of process as it deems necessary.

17 C.F.R. § 202.5(a).  This language creates a "strong presumption" that any investigatory decisions made by SEC employees involve policy considerations.  When regulators "exercise[] their discretion to choose from various courses of action," including choices that involve "operational" and "day-to-day decisions," the presumption attaches that such choices are made in furtherance of the policies underlying the regulators' authority.  United States v. Gaubert, 499 U.S. at 332.

In light of the statutory and regulatory framework governing SEC investigations, the only way for the plaintiffs to establish subject matter jurisdiction in this case is to identify acts or omissions of SEC investigators that satisfy one of two criteria.  First, they may show that the conduct to which the plaintiffs trace their injuries was mandatory by virtue of some rule, regulation, or policy not subject to judgment and choice.  In other words, SEC employees must have failed to follow "specific directions," such that "in those instances, there was no room for choice or judgment."  United States v. Gaubert, 499 U.S. at 324 (citing Berkovitz v. United States, 486 U.S. at 542-43); see id. ("If the employee violates the mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy.").  Or, second, the plaintiffs may "allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime."  Id. at 324-25.  This option presents a high hurdle, because "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion."  United States v. Gaubert, 499 U.S. at 324.

As discussed in the next section, the plaintiffs have failed to identify any acts or omissions that satisfy either criterion.  None of the challenged decisions violated any mandatory duty, and each represents conduct grounded in policy considerations.  None of these acts or omissions, therefore, can lead to FTCA liability or create subject matter jurisdiction in this Court.

### C.  The Challenged Acts and Omissions

Although the plaintiffs' complaint emphasizes the SEC's "failure to terminate Madoff's Ponzi scheme" and to "stop the Ponzi scheme," Compl. ¶¶ 1-2, the plaintiffs cannot hope to prevail on any claim that is grounded on the SEC's failure to initiate civil proceedings against Madoff.  "The decision to initiate a prosecution has long been regarded as a classic discretionary function," Sloan v. U.S. Dept. of Hous. & Urban Dev., 236 F.3d at 760, and this discretion extends beyond criminal prosecutions to encompass the initiation of administrative proceedings, id., and civil actions as well — including those commenced by the SEC.  See Bd. of Trade of City of Chicago v. S.E.C., 883 F.2d 525, 530-31 (7th Cir. 1989) (explaining that prosecution under the Securities Exchange Act is "discretionary, not mandatory").  An agency's decision *not* to initiate civil proceedings is of course equally discretionary.  Id. at 530 ("Refusal to prosecute is a classic illustration of a decision committed to agency discretion . . . [and such decisions] are presumptively non-reviewable.").  Apparently recognizing this impediment to their success, the plaintiffs claim that "the negligent failures of the SEC staff prevented the matter ever from getting to SEC enforcement decision makers," Opp. at 6, and that the plaintiffs were "harmed directly by the failure of the SEC to warn [them] and others that Mr. Madoff was not performing trades as he said he was and was engaged in a Ponzi scheme."  Id.

The government responds, in effect, that negligent investigations by the SEC can never give rise to liability under the FTCA: because SEC employees conduct investigations only "to assist the Commission in deciding whether to commence civil proceedings against suspected violators" — a prosecutorial decision that is shielded from FTCA liability — claims based on the negligent performance of such investigations are barred by the discretionary function exception.

15

That is so, according to the government, because the investigations are inseparable from the decision whether to prosecute.  Def. Mem. at 9.

The case law cited by the government does not support this categorical argument. In each case cited — where a negligent investigation was held immune from FTCA liability — the direct cause of the plaintiff's injury was not the investigation itself, but rather a criminal prosecution, administrative action, or other adverse proceeding initiated by the agency.  These cases simply hold that where an agency's decision to take adverse action is shielded from liability by the discretionary function exception, the plaintiff cannot circumvent that obstacle by attacking the negligence of an underlying investigation that prompted the action.  See, e.g., Sloan v. U.S. Dep't of Housing and Urban Dev., 236 F.3d at 761-62 (where the allegation of improper investigatory conduct is "inextricably tied" to the decision to prosecute and to presentation of evidence, the discretionary function exception applies and the government is immune); General Dynamics Corp. v. United States, 139 F.3d 1280, 1283-85 (9th Cir. 1998); Fisher Bros. Sales, Inc. v. United States, 46 F.3d 279, 285-87 (3d Cir. 1995) (en banc).

If an agency's negligent investigation leads directly to a plaintiff's injury — as opposed to merely prompting a discretionary prosecutorial decision (including a decision not to prosecute) that causes the injury — this negligence theoretically may serve as the basis for FTCA liability.  While it is difficult to conjure up a set of facts that would trigger such liability, the D.C. Circuit implicitly has recognized a negligent investigation claim as a theoretical possibility:

> In this case . . . the challenged investigation is inextricably tied to the discretionary, quasi-prosecutorial decision to suspend plaintiffs from governmental contracting. *The complaint does not allege any damages arising from the [improper or negligent] investigation itself, but only harm caused by the suspension to which it*

*assertedly led*.  At oral argument, plaintiffs were given a further opportunity to disentangle the investigation and suspension by proffering an amendment to the complaint *that would allege some harm arising from the investigation that was separate from the suspension itself*; they were unable to do so.  *Because the allegedly improper investigation thus caused no injury "distinct from the harm caused by the ultimate prosecution itself*," the former is not "sufficiently separable from [the] protected discretionary decision[ ]" and "cannot by itself support suit under the FTCA."

Sloan v. U.S. Dep't of Housing and Urban Dev., 236 F.3d at 762 (quoting Gray v. Bell, 712 F.2d

490, 515 (D.C. Cir. 1983)) (internal citations omitted).

      As explained above, however, the plaintiffs in this case can succeed only by

identifying SEC conduct that violated compulsory duties or was not susceptible to policy

analysis.  See supra at 10-14.  Put another way, "to survive a motion to dismiss in this area, a

complaint must either allege facts demonstrating that the challenged actions are not grounded in

public policy considerations or base its claims on government agents' mandatory obligations."

Ignatiev v. United States, 238 F.3d at 466.  "Otherwise the court will presume that the challenged

acts are discretionary public-policy decisions and not amenable to suit."  Id. at 466-67.

Accordingly, in opposing the dismissal of their case, the plaintiffs point to acts and omissions of

SEC employees during the Madoff inquiries that, in the plaintiffs' view, violated mandatory

duties or were not susceptible to policy analysis.

      The plaintiffs contend that these acts and omissions are not protected by the

discretionary function exception because they (1) violated the Securities Exchange Act of 1934

itself; (2) violated internal policies of the SEC; (3) violated professional standards for the

conduct of financial investigations; or (4) fell outside any permissible range of conduct.  See

Opp. at 16-17, 27-32, 34-36.  As discussed below, however, none of the conduct identified by the

plaintiffs violated a non-discretionary duty, and all of the challenged decisions are susceptible to policy analysis.  The plaintiffs' complaint, therefore, cannot survive the government's motion to dismiss.

1.  Violation of the Securities Exchange Act of 1934

The plaintiffs first contend that SEC investigators violated 15 U.S.C. § 78q(j), a provision of the Securities Exchange Act of 1934 addressing the coordination of inquiries between the SEC and "examining authorities," which are "self-regulatory organization[s] registered with the Commission under this chapter . . . with the authority to examine, inspect, and otherwise oversee the activities of a registered broker or dealer."  15 U.S.C. § 78q(j)(5).[6]  The specific provision that the plaintiffs contend was violated provides:

> The Commission and the examining authorities shall share such information, including reports of examinations, customer complaint information, and other nonpublic regulatory information, *as appropriate to foster a coordinated approach to regulatory oversight* of brokers and dealers that are subject to examination by more than one examining authority.

15 U.S.C. § 78q(j)(2) (emphasis added).  In the context of this language, the phrase "as appropriate" is "a qualification that clearly confers discretion to determine whether, when, to what extent, and how information is to be shared in order to coordinate oversight activity." Molchatsky v. United States, 778 F. Supp. 2d at 433; accord Dichter-Mad Family Partners, LLP v. United States, 707 F. Supp. 2d at 1042-43.

---

[6]      Until recently, Subsection (j) of Section 78q was designated as subjection (k), which is how the parties refer to it in their papers.  See 15 U.S.C. § 78q(k) (indicating redesignation as (j)).

Attempting to counter the obvious implications of the words "as appropriate," the plaintiffs point to the OIG Report, which notes that, in several instances, information-sharing that was not performed would have been appropriate.  Opp. at 27.  The plaintiffs suggest that these findings establish that the investigators lacked discretion not to share information.  But a post-hoc determination by the OIG about the appropriateness of sharing particular information does not constitute a mandatory requirement that the information be shared by the investigators.  The FTCA exempts claims that are based on the performance of a discretionary function "whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  The OIG Report concludes that the investigators erred in determining whether it was appropriate to share certain information, not that the investigators lacked the authority to make that discretionary determination.  Moreover, it is perfectly evident — for purposes of the second half of the discretionary function test — that discretion to share information "as appropriate to foster a coordinated approach to regulatory oversight" requires SEC staff to make policy determinations about the proper relationship among examiners; such discretionary policy determinations are shielded from FTCA liability.  The plaintiffs therefore have not alleged the violation of any compulsory statutory duties or identified any conduct here that is not susceptible to policy considerations.

2.  Violation of Internal SEC Policies

The plaintiffs next contend that SEC investigators breached several mandatory policies of the agency.  Specifically, they assert that SEC policies required investigators to open a matter under inquiry ("MUI") at the beginning of each enforcement investigation, to generate planning memoranda to guide their inquiries, and to facilitate information sharing by opening and

closing cases in the agency's STARS case-tracking system.  See Compl. ¶¶ 93, 109, 130; Opp. at

27-29.  The agency's adoption of these internal procedures, according to the plaintiffs, had the

effect of making those steps mandatory for subordinate employees and thus non-discretionary

within the meaning of the FTCA.  See Opp. at 27-28.  But the plaintiffs fail to demonstrate "that

these tasks were *mandatory* or were not otherwise susceptible to *policy judgment*."  Dichter-Mad

Family Partners, LLP v. United States, 707 F. Supp. 2d at 1046 (rejecting similar internal policy

claims).

      The plaintiffs rely on statements in the OIG Report that investigators "should

have" logged information into STARS, and that "[t]he failure to properly track the examination

and coordinate among offices resulted in embarrassment and a waste of Commission resources as

two examination teams from two different offices essentially conducted the same examination."

OIG Report at 142.  While the Report criticizes staffers' failure to adhere to case-tracking

procedures that examiners acknowledged they "should use," id. at 132, it notably does not

identify any specific policies — as opposed to best practices — that these omissions violated.  To

the contrary, in the passage of the OIG Report that the plaintiffs assert reveals a mandatory policy

of logging information into STARS, see Compl. ¶ 109, the Report indicates that "there was no

rule or policy about" information-sharing between SEC offices, despite the fact that sharing

information through STARS could have prevented the type of problems that plagued the Madoff

inquiries.  OIG Report at 133.

      Similarly, in the section of the OIG Report cited by the plaintiffs for their

assertion that opening a MUI is "a required step at the beginning of any Enforcement

investigation," Compl. ¶ 130, the Report instead quotes the SEC's Enforcement Manual, which

20

states that "complaints that *appear to be serious and substantial* are *usually* forwarded to staff in

the home office . . . and *may* result in the opening of a MUI."  OIG Report at 263 n.183

(emphasis added).  The Report also includes one SEC employee's testimony that she "learn[ed]

shortly after she joined the SEC that sometimes a MUI was not opened 'if it was clear so quickly

that we did not — it wouldn't be something we pursued.'"  Id. at 263.  Regardless of whether

SEC investigators misjudged whether the Madoff-related complaints warranted opening a MUI,

the investigators undeniably were exercising judgment and choice over a matter entrusted to their

discretion when making those determinations.

      The plaintiffs also allege that when the SEC's Northeast Regional Office

("NERO") belatedly started examining Madoff, the office "did not even draft a Planning

Memorandum to guide [its] investigation, in violation of SEC policy and practice."  Compl. ¶ 93

(citing OIG Report at 166).  In fact, the section of the Report cited by the plaintiffs on this point

demonstrates the *lack* of any policy regarding the drafting of planning memoranda:

> Unlike the [Office of Compliance Inspections and Examinations]
> examination team, the NERO examination team did not draft a
> planning memorandum laying out the scope of the examination.
> Lamore recalled that at the time of the examination, NERO might
> not have had a practice of writing planning memoranda.  Ostrow
> agreed, explaining . . . that a formalized process was not in place for
> determining the focus of an examination[.]

OIG Report at 166 (internal citations omitted).

      In sum, the OIG Report "describes no mandatory case-opening, case-management,

or other administrative or investigative protocols," Molchatsky v. United States, 778 F. Supp. 2d

at 433, and the plaintiffs have not demonstrated the existence of any "mandatory obligations

requiring the SEC to conduct its investigations in a particular manner or to bring an enforcement

action in particular situations." Dichter-Mad Family Partners, LLP v. United States, 707 F. Supp.

2d at 1048.  Absent such mandatory obligations, SEC investigators tasked with "the sifting of

evidence, the weighing of its significance, and the myriad other decisions made during

investigations" were engaged in activities that "plainly involve elements of judgment and

choice."  Sloan v. U.S. Dep't of Housing and Urban Dev., 236 F.3d at 762.  Those choices

require consideration of the optimal management of time, effort, and resources, and thus are

susceptible to policy analysis.  As a result, the discretionary function test is satisfied.

### 3.  Violation of Professional Standards

The plaintiffs' next theory is based on the SEC's alleged deviation from

professional standards for the conduct of competent financial investigations.  Opp. at 30-32.

Relying again on the OIG Report, the plaintiffs assert that SEC staff "failed to follow applicable

audit plans, failed to modify these audit plans in the face of changing circumstances, failed to

seek necessary approval from superiors for these modifications, [and] failed to seek third-party

verification of trading activity alleged by Mr. Madoff to have occurred."  Id. at 30 (citing Compl.

¶¶ 3, 14, 164-66, 171).

As a threshold matter, the plaintiffs have not demonstrated that a government

employee's lack of adherence to professional standards can constitute the violation of a non-

discretionary duty under the FTCA.  In support of such a proposition, the plaintiffs cite General

Dynamics Corp. v. United States, No. 89-6762, 1996 WL 200255 (C.D. Cal. Mar. 25, 1996),

rev'd 139 F.3d 1280 (9th Cir. 1998), in which the district court held the United States liable for

the professional malpractice of the Defense Contract Audit Agency in performing an audit that

fell below professional standards.  See Opp. at 30-31.  The Ninth Circuit, however, reversed the district court upon concluding that General Dynamics' injury was not caused by the audit itself but rather by the Justice Department's decision to criminally prosecute the company, a discretionary function for which the United States was immune from suit.  General Dynamics Corp. v. United States, 139 F.3d at 1280.  Decisions to prosecute are shielded from FTCA liability by the discretionary function exception, and although the Justice Department's decision was influenced by the negligently performed audit, the Ninth Circuit held that General Dynamics could not avoid this barrier by directing its lawsuit toward the negligence of the auditing agency. Id. at 1283-85.

The plaintiffs contend that had the court of appeals in General Dynamics Corp. not found the audit to be inextricably intertwined with the decision to prosecute, the case would stand for the proposition that professional standards constitute non-discretionary obligations, the violation of which engenders FTCA liability.  It is telling that the plaintiffs cite no case in support of their position other than the district court decision overruled by the Ninth Circuit.

Even in the context of audits, our own circuit has rejected a much stronger argument for FTCA liability than that offered by the plaintiffs.  In Sloan v. U.S. Dep't of Housing and Urban Dev., 236 F.3d at 762, plaintiffs suing HUD for a negligent investigation tried to avoid the discretionary function exception by arguing that the investigation "differ[ed] from others because it took the form of an 'audit.'"  The plaintiffs in Sloan (unlike the plaintiffs in this case) identified specific auditing standards imposed by statute on the agency in question, id. at 763, but the court of appeals nevertheless rejected their argument, concluding that the auditing standards left "ample room for the exercise of professional judgment."  Id.  In this

circuit, then, the existence of professional standards to which a government employee is bound does not necessarily strip that employee of discretion within the meaning of the FTCA.

The plaintiffs' claim in this case is even weaker than the one rejected in <u>Sloan</u>. First, this case involves the investigation of potential securities law violations, a quasi-prosecutorial endeavor that entails even more room for discretion and professional judgment than the performance of financial audits.  Second, the plaintiffs do not point to any specific body of professional standards that SEC examiners or investigators are obliged to follow.  Instead, the plaintiffs simply assert that employees violated "professional standards," the proof of which apparently is found in the "sheer incompetence" of their actions.  Opp. at 30.  Without having identified any particular professional standards binding SEC investigators — much less standards that are more rigid than those discussed in <u>Sloan</u> — the plaintiffs have not alleged the violation of any mandatory duties.  Nor have they revealed any decisions that are untethered from the policy considerations that inherently underlie investigatory decisionmaking.

Even if FTCA liability could be premised on a violation of professional standards, therefore, the plaintiffs' claim in this case cannot succeed.  And in truth, the plaintiffs' allegations serve only to illustrate the degree to which decisions made by SEC investigators during the Madoff inquiries were characterized by the exercise of judgment and choice.[7]

---

[7]     For example, the plaintiffs describe how one of the investigative teams drafted a letter that the team intended to send to the National Association of Securities Dealers ("NASD") to verify Madoff's claimed trading activity.  <u>See</u> Compl. ¶ 75; OIG Report at 97.  Had the letter been sent and the requested information received from NASD, the team might have uncovered Madoff's Ponzi scheme.  OIG Report at 98, 142.  But the team never sent the letter, and as the plaintiffs report, "one of the supervising staff explained that the letter was not sent because it would have been too burdensome and time-consuming for the staff to review the documents that the NASD would have supplied in response."  Compl. ¶ 76; <u>see</u> OIG Report at 30, 98.  No matter how tragically erroneous the team's cost-benefit analysis was in this instance, its decision

4.  Exceeding the Range of Permissible Conduct

Finally, the plaintiffs maintain that the discretionary function exception does not apply because the behavior of the SEC employees investigating Madoff was outside any "permissible range of conduct," Opp. at 34, a theory of liability for which the plaintiffs purport to find support in Fazi v. United States, 935 F.2d 535 (2d Cir. 1991).  According to the plaintiffs, the acts and omissions of the SEC investigators were so egregious that they "cannot be protected under the first prong of the Berkovitz test, regardless of whether the SEC actually adopted a formal policy saying as much, because they '[could not] appropriately be the product of judgment or choice.'"  Opp. at 34 (quoting Fazi v. United States, 935 F.2d at 538); see id. at 34-35 (comparing investigators' failure to verify Madoff's trading activity to falling asleep on the job, neither of which could be within a staffer's discretion regardless of whether it violated any specific statute, regulation, or policy).

This theory is based entirely on a misreading of Fazi.  The passage from that opinion relied upon by the plaintiffs simply describes the two-part test under Berkovitz and Gaubert for determining whether the discretionary function exception applies to particular acts. The court in Fazi explained that in addition to protecting "decisions at the policy or planning level," the exception "bars claims based on day-to-day management decisions if those decisions require judgment as to which of a range of permissible courses is wisest." Fazi v. United States, 935 F.2d at 538.  As the ensuing discussion makes clear, by "permissible courses" of action, the court simply meant conduct that is not prohibited by statute or regulation — prohibitions that

_____

exemplifies precisely the type of judgment call that is protected by the discretionary function exception.

25

would leave "no room for choice [because] the action will be contrary to policy."  Id. (quoting

United States v. Gaubert, 499 U.S. at 324).  Only in that context, where "the employee violates

[a] mandatory regulation," id., did the court state that "the employee's conduct cannot

appropriately be the product of judgment or choice."  Id. (quoting Berkovitz v. United States, 486

U.S. at 536).  The court's use of the phrase "range of permissible courses" refers to these

established principles and nothing else; Fazi did not announce an amorphous new category of

conduct unprotected by the discretionary function exception.  The decision therefore offers no

support for the plaintiffs' theory.

### D.  Discovery

Having failed to identify any statutes, regulations, or known SEC policies that

agency staffers violated during the Madoff inquiries, the plaintiffs maintain that they are entitled

to discovery in order to determine "whether the conduct of SEC staff was prohibited by any

handbooks, guidelines, policies or procedures or directives governing SEC investigations."  Opp.

at 33.

"This Circuit's standard for permitting jurisdictional discovery is quite liberal."

Diamond Chemical Co., Inc. v. Atofina Chemicals, Inc., 268 F. Supp. 2d 1, 15 (D.D.C. 2003).

Nevertheless, "[w]here additional discovery would not 'be beneficial to [plaintiff's]

establishment of jurisdiction,' discovery need not be granted prior to dismissal on jurisdictional

grounds."  Baptist Memorial Hosp. v. Johnson, 603 F. Supp. 2d 40, 44 (D.D.C. 2009) (quoting

Cheyenne-Arapaho Tribes v. United States, 517 F. Supp. 2d 365, 373 (D.D.C. 2007)).  "'Where

there is no showing of how jurisdictional discovery would help plaintiff discover anything new, it

[is] inappropriate to subject [defendant] to the burden and expense of discovery.'"  Baptist

Memorial Hosp. v. Johnson, 603 F. Supp. 2d at 44 (quoting Medical Solutions v. C Change

Surgical LLC, 468 F. Supp. 2d 130, 135 (D.D.C. 2006)).

        The plaintiffs rely on Ignatiev v. United States, 238 F.3d 464 (D.C. Cir. 2001), in

support of their discovery request.  See Opp. at 33.  In Ignatiev, the plaintiffs brought an FTCA

action based on conduct by the Secret Service, and the district court dismissed the claim under

the discretionary function exception for failure to identify any mandatory duties that were

allegedly violated by the agency.  The D.C. Circuit reversed and permitted discovery of whether

the Secret Service maintained internal guidelines that could serve as an actionable source of

mandatory obligations.  Id. at 467.  The plaintiffs in this case request a similar discovery

opportunity.

        A comparison of the situation in Ignatiev with the facts here, however, reveals that

discovery is not warranted.  As noted, Ignatiev involved a claim against the Secret Service, which

acknowledged that it maintained confidential internal policies.  Ignatiev v. United States, 238

F.3d at 466.  The plaintiffs sought to prove that among these policies were guidelines on the

protection of foreign embassies, which the agency allegedly violated.  The Court of Appeals

explained that the plaintiffs "have reason to believe that some such guidelines exist, since the

Secret Service's only mandate to protect Washington's missions is to 'perform such duties as the

Director . . . may prescribe.'"  Id. at 467 (quoting 3 U.S.C. § 202).

        In contrast, the SEC's Enforcement Manual is publicly available, as is the lengthy

OIG Report, which exhaustively chronicles the SEC's slipshod oversight of the Madoff

enterprise.  In addition, "the SEC Inspector General has issued a follow-up report that specifically examines the Office of Compliance Inspections and Examinations's 'modules, policies, procedures and guidance associated with the conduct of its examinations' into Madoff's conduct."  Dichter-Mad Family Partners, LLP v. United States, 707 F. Supp. 2d at 1054 (quoting report); see supra at 6, n.3.  Despite the voluminous material available to the plaintiffs, they are able to cite nothing that plausibly suggests that the SEC maintains additional internal policies that were violated by staffers during the Madoff inquiries.  The plaintiffs identify examples of mismanagement described in the OIG Report and assert that the government "admits conduct that appears very likely to be covered by internal SEC policies or directives."  Opp. at 3.  But the lack of any reference to such policies or directives within the Enforcement Manual or the more than 450 pages of the OIG Report is strong evidence to the contrary.  "Indeed, the public availability of the extensive OIG Report upon which Plaintiffs rely heavily, and of the SEC's current Enforcement Manual, suggest that Plaintiffs are not likely to uncover hidden mandatory rules through discovery."  Molchatsky v. United States, 778 F. Supp. 2d at 438 (rejecting similar discovery request and contrasting the plaintiffs' situation with that in Ignatiev).

The plaintiffs' request for jurisdictional discovery, therefore, is not supported by Ignatiev, and the plaintiffs "have not pleaded 'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the sought-after SEC policies and guidelines."  Dichter-Mad Family Partners, LLP v. United States, 707 F. Supp. 2d at 1053 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. at 556); see id. at 1052-54 (rejecting similar discovery request).

28

IV.  CONCLUSION

The financial losses suffered by the plaintiffs and other victims of Bernard Madoff's fraud are undeniably tragic, and a desire to hold the government accountable for the SEC's egregious and well-documented missteps is understandable.  But were the plaintiffs to prevail, "the SEC would become the guarantor of the investment decisions of individuals who choose to participate in regulated markets," Baer v. United States, 2011 WL 6131789, at *7, a result not in keeping with the FTCA and its statutorily imposed limits.  The plaintiffs have not identified any "mandatory obligations" violated by SEC employees during the performance of their discretionary responsibilities, nor have they alleged facts "demonstrating that the challenged actions are not grounded in public policy considerations."  Ignatiev v. United States, 238 F.3d at 466.  Consequently, their complaint cannot survive the government's motion to dismiss.  See id.

For the foregoing reasons, the United States' motion to dismiss for lack of subject matter jurisdiction has been granted.  An Order consistent with this Opinion was issued on March 26, 2012.

SO ORDERED.


/s/_____
PAUL L. FRIEDMAN
United States District Judge


DATE:  June 19, 2012